227 F.2d 643
 MOTORES DE MEXICALI, S.A., a corporation, Appellant,
v.
BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION and E.
A. Lynch, Trustee of the Estate of Erbel, Inc.,
doing business as Bi-Rite Auto Sales,
bankrupt, Appellee.
 No. 14397.
 United States Court of Appeals Ninth Circuit.
 June 30, 1955.
 
 Ernest R. Utley, Los Angeles, Cal., for appellant.
 Hugo A. Steinmeyer, Samuel B. Stewart, Robert H. Fabian, Craig, Weller & Laugharn, Los Angeles, Cal., for appellee.
 Before FEE and CHAMBERS, Circuit Judges, and WIIG, District Judge.
 JAMES ALGER FEE, Circuit Judge.
 
 
 1
 Between March 5 and April 3, 1953, Motores de Mexicali, S.A.,[1] sold five automobiles to Erbel, Inc., a California corporation doing business as Bi-Rite Auto Sales.[2] Physical possession with bills of sale and the Mexican title documents pertaining to each car was delivered in Mexico to a representative of Bi-Rite, who drew nonnegotiable drafts for the purchase price of these cars. These drafts, which were delivered to Motores, were payable through Bank of America National Trust & Savings Association,[3] and by their own terms provided that they were to be forwarded for 'collection only' and that they were to be transmitted to the Bank with the documents of title.
 
 
 2
 As to no one of these cars was the draft accompanied by the title documents or bills of sale. The drafts of the first two cars were dishonored by Bi-Rite on March 18, 1953, and were returned to Motores' bank in Mexico, which again forwarded them to the Bank on March 28, where they were again dishonored and returned on May 19. After these two drafts had been returned, Motores delivered three other cars to Bi-Rite, with bills of sale and Mexican title certificates, on April2. These drafts were dishonored on April 7, and were returned May 19.
 
 
 3
 Bi-Rite presented an application to the Bank for loans upon each of the five automobiles now in controversy. It was in each instance in physical possession of the particular car at the time. It also had muniments of title consisting of the respective bills of sale from Motores to Bi-Rite and ownership certificates of the Department of Motor Vehicles of the State of California issued on the basis of the Mexican official registration papers. Each of these certificates showed title in Bi-Rite.
 
 
 4
 The Bank had filed with the Secretary of State a statement of trust receipt financing on November 28, 1952.
 
 
 5
 Upon various dates from April 6 to May 19, both inclusive, the Bank loaned sums in adequate amounts to Bi-Rite upon trust receipts which included each of the five cars mentioned.
 
 
 6
 On July 2, 1953, Bi-Rite filed a petition in voluntary bankruptcy and was adjudicated the same day. Upon petition of the Bank, priority to the extent of its liens, less certain expense, was awarded to it against a fund which included proceeds of the sale of the five cars after a trial in which Motores appeared as cross-claimant. The determination of the Referee was affirmed by the District Judge, and Motores has appealed.
 
 
 7
 If the facts found by the Referee be taken as correct, there is no doubt his decision was proper between these parties. Certain testimony as to negotiations between Motores and Bi-Rite, which were shown never to have come to the knowledge of the Bank, was stricken by the Referee as immaterial as to the Bank.
 
 
 8
 From the testimony in the record, the conclusion that there was a cash sale and the draft was taken as conditional payment probably cannot be supported. But the transaction took place in Mexico, and this Court will not pass upon the question whether the conclusion was correct under the applicable law. In a cash sale, there are express or implied concurrent conditions of payment and delivery. Such a condition of payment at the same time as title passes, even if included in an original contract of sale, is subject to waiver by conduct. If a check used as conditional payment is not presented within a reasonable time after delivery, such a waiver may be predicated upon the intention shown by the delay. Any conduct which shows an intention to trust to the credit of the purchaser is sufficient. Here the circumstances of the return of the drafts without an attempt to reclaim the property is sufficient to show such reliance.
 
 
 9
 The possession of the muniments of title and the car itself, after the draft had been dishonored, showed title was lodged in Bi-Rite. The Bank loaned money upon a title then vested in Bi-Rite.
 
 
 10
 Had title not passed, the Referee would have been correct in finding Motores was estopped as against the Bank. There were at least three representations by Motores, upon which it intended others to rely.
 
 
 11
 (1) Possession and documents were placed in the hands of Bi-Rite, and by use of these it became the officially registered owner in California.
 
 
 12
 (2) When the first two drafts were dishonored and returned, motores did not attempt to reclaim the two cars. It likewise sold three more cars to Bi-Rite upon the same terms. It makes no difference, of course, whether Motores knew in fact of the return of the drafts.
 
 
 13
 (3) From May 21 until at least the adjudication in bankruptcy on July 2, it made no move to rescind the transaction or reclaim the property.
 
 
 14
 The Bank relied upon these representations, which are now claimed different from the facts, and was damaged thereby.
 
 
 15
 The ultimate determination of the Referee, affirmed by the District Judge, was correct. The Referee intimated that the balance of the proceeds after satisfying the claim of the Bank should go to Motores. The logic of this opinion requires these go to the general creditors. But the point is not raised before us.
 
 
 16
 Affirmed.
 
 
 
 [1]
 Called 'Motores.'
 
 
 [2]
 Called 'Bi-Rite' or 'bankrupt.'
 
 
 [3]
 Called 'Bank.'